**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

---

|                                  |     |                               |
| -------------------------------- | --- | ----------------------------- |
| PEDRO VARGAS-RODRIGUEZ,          | :   |                               |
|                                  | :   | Civil Action No. 18-2628(RMB) |
| Petitioner                       | :   |                               |
|                                  | :   |                               |
| v.                               | :   | **OPINION**                   |
|                                  | :   |                               |
| DAVID ORTIZ, WARDEN              | :   |                               |
|                                  | :   |                               |
| Respondent                       | :   |                               |
|                                  | :   |                               |

---

**BUMB, United States District Judge**

Petitioner, an inmate incarcerated in the Federal
Correctional Institution in Fort Dix, New Jersey, filed a habeas
petition under 28 U.S.C. § 2241, challenging the calculation of
his sentence. (Pet., ECF No. 1.) Respondent filed an answer,
opposing habeas relief. (Answer, ECF No. 3.) Petitioner filed two
replies. ("First Reply," ECF No. 4; "Second Reply," ECF No. 7.)
The Court determined that a response to Petitioner's second reply
was required and directed Respondent to file a sur-reply. (Order,
ECF No. 8.) Respondent filed a letter application seeking to file
exhibits to its sur-reply under seal. (Letter, ECF No. 13.) After
Petitioner indicated that he wished to proceed with his claim under
U.S.S.G. § 5G1.3, this Court granted Respondent's request to file
exhibits under seal. (Letter, ECF No. 15; Order, ECF No. 16.) These

matters are now before this Court. For the reasons discussed below, the Court denies the habeas petition.

I.    BACKGROUND

On November 20, 2003, June 17, 2004, and July 14, 2005, the Commonwealth of Puerto Rico charged Petitioner with first degree murder and weapons violations but Petitioner was not arrested on these charges until August 23, 2005. (Declaration of J.R. Johnson,[1] ("First Johnson Decl.," ECF No. 3-1, ¶4, citing attachments to petition.) Then, on December 1, 2005, Petitioner was indicted on drug charges in the U.S. District Court, Puerto Rico in criminal Case No. 05-417 ("Case No. 05cr417") (Declaration of Jessica O'Neill, Attach. 1, ECF No. 3-4; U.S. v. Martinez-Figueroa et al., 05-cr-417-PG-9 (D.P.R., ECF No. 1)).[2]

Petitioner was temporarily transferred to federal authorities on a writ of habeas corpus *ad prosequendum* on December 2, 2005 for processing in Case No. 05cr417. (First Johnson Decl., Attach. 1, 2; ECF No. 3-2 at 2-6.) On August 21, 2007, Petitioner was sentenced in Case No. 05cr417 to a 216-month term of imprisonment for conspiracy to possess with intent to distribute cocaine. (First Johnson Decl., ECF No. 3, ¶6.) The Judgment was silent as to the

---

[1] J.R. Johnson is employed as a Correctional Programs Specialist with the Federal Bureau of Prisons, Designations and Sentence Computation Center. (First Johnson Decl., ECF No. 3-1, ¶1.)

[2] Available at www.pacer.gov.

relationship of the federal sentence to any future sentence imposed by the Commonwealth of Puerto Rico. (First Johnson Decl., Attach. 3, ECF No. 3-2 at 8-12.) On August 31, 2007, Petitioner was returned to the authorities of the Commonwealth of Puerto Rico pursuant to the writ of habeas corpus *ad prosequendum*. (Id., ECF No. 3, ¶7; Attach. 2, ECF No. 3-2 at 5.)

On November 9, 2007, Petitioner was sentenced in the Superior Court of Ponce, Puerto Rico to a 12-year term of imprisonment for second-degree murder and a 10-year term of imprisonment for weapons violations. (Id., ¶¶8, 9.) Those sentences, however, were vacated on February 4, 2008, and Petitioner was sentenced to an 18-year term of imprisonment on the murder and weapons violations. (Id., ¶10.)

Petitioner was released on parole by Commonwealth of Puerto Rico authorities on October 24, 2014 to the custody of the U.S. Marshals for service of his federal sentence. (Id., ¶11.) On April 12, 2016, the federal sentencing court reduced Petitioner's federal sentence from 216-months to 188-months based on the amended sentencing guidelines. (Id., ¶12; Attach. 8, ECF No. 3-2 at 22.)

The Bureau of Prisons' ("BOP") Designation and Sentence Computation Center ("DSCC") evaluated Petitioner's sentence for a potential *nunc pro tunc* concurrent determination under 18 U.S.C. § 3621(b) and Barden v. Keohane, 921 F.2d 476 (3d Cir. 1990). (Id., ¶13; Attach. 9, ECF No. 3-2 at 24.) When the sentencing court

failed to respond, the BOP determined that a concurrent designation was not appropriate. (First Johnson Decl., ECF No. 3, ¶14; Attach. 11, 12, ECF No. 3-2 at 28-31.)

On June 16, 2017, however, the sentencing court issued an amended judgment ordering Petitioner's sentence to be served concurrently with his Commonwealth of Puerto Rico sentence. (Id., ¶15, Attach. 13, ECF No. 3-2 at 33-39.) Thus, the BOP recalculated Petitioner's 188-month sentence as concurrent, commencing on August 21, 2007. (Id., ¶16, Attach. 15, ECF No. 3-2 at 43-44.) The BOP did not apply prior custody credit to the federal sentence because the time spent in custody from August 23, 2005 through August 20, 2007 was applied toward Petitioner's Commonwealth of Puerto Rico sentence. (Id., ¶17.) The BOP also determined that Petitioner was not entitled to credit under Kayfez[3] or Willis.[4] (Id., ¶17, Attach. 17, ECF No. 3-2 at 49-50.) Thus, Petitioner's projected release date is April 13, 2021. (Johnson Decl., ¶17; Attach. 15, ECF No. 3-2 at 43-44.)

II.  THE PETITION, RESPONSE AND REPLIES

    A.  The Petition

Petitioner contends that he is entitled to additional jail credit in one of three ways: (1) "Petitioner was unable to make

---

[3] Kayfez v. Gasele, 993 F.2d 1288 (7th Cir. 1993).

[4] Willis v. United States, 438 F.2d 923 (5th Cir. 1971).

bail due to the Federal charges ('Willis credit");" (2) "the state relinquishes its jurisdiction by procuring Petitioner's presence via a writ;" and (3) "the commonwealth and Federal government are the same sovereign." (Petr's Mem., ECF No. 1 at 11.) In support of his first claim, Petitioner states "[a]fter Petitioner was arrested by the Commonwealth he was unable to make bail as there was a Federal detainer lodge[d] against him for charges that arose out of the same course of conduct related to the charges brought by the Commonwealth." (Petr's Mem., ECF No. 1 at 11, quoting Willis v. United States, 438 F.2d 923 (5th Cir. 1971)).

In support of his second claim, Petitioner states:

> [a]s the facts of this case succinctly shows Petitioner was removed from the custody of the Commonwealth via writ of habeas corpus ad prosequendum. This being correct the Petitioner was merely on loan to Federal authorities, as such it would not have been prudent for the Commonwealth to secure a writ of habeas corpus ad prosequendum to have Petitioner returned to its custody as indicated by the February 20, 2007, transfers of Petitioner to answer charges [brought] by the Commonwealth, if the Commonwealth did not relinquish its Jurisdiction. See Roche v. Sizer, 675 F.2d 507, 510 (2nd Cir[.] 1982) (holding that federal court relinquish Jurisdiction by releasing prisoner on bail). By parity of reasoning the same apply here, where the Commonwealth secured Petitioner via a writ, implicitly suggests that it had relinquished its primary jurisdiction.

(Petr's Mem., ECF No. 1 at 12.)

For Petitioner's third claim, Petitioner argues that <u>Puerto Rico v. Sanchez-Valle</u>, 136 S. Ct. 1863 (2017) establishes the Commonwealth of Puerto Rico and the federal government are the same sovereign. (Petr's Mem., ECF No. 1 at 12.) Petitioner further contends that he is not precluded from jail credit for time served in state custody because the Commonwealth of Puerto Rico is not a state. (<u>Id.</u> at 13.)

Petitioner states that his co-defendant, William Irizarry Delvalle ("Delvalle"), received credit against his federal sentence for the same time period Petitioner seeks here. (<u>Id.</u> at 13.) Delvalle was released to a halfway house on January 5, 2015. (<u>Id.</u> at 14.)

B.   <u>The Response</u>

Respondent assumes that Petitioner is seeking jail credit from August 23, 2005, the day of the state arrest, until the day prior to commencement of his federal sentence, August 20, 2007. (Answer, ECF No. 2 at 5.) Respondent submits three reasons to deny the petition: (1) Petitioner was in the primary custody of the Commonwealth of Puerto Rico from August 23, 2005 through August 20, 2007; (2) Petitioner received credit for this time period against his Commonwealth of Puerto Rico sentence, and the BOP is statutorily barred from granting double credit; (3) the Commonwealth of Puerto Rico and the federal government are not the same sovereign. (<u>Id.</u>, at 6.)

C. Petitioner's Replies

Petitioner complains that Respondent did not address his argument that Delvalle, his codefendant who was arrested and sentenced in the Commonwealth of Puerto Rico and the federal district court on or near the same dates as Petitioner, received credit against his federal and state sentences for August 23, 2005 through August 21, 2007.[5] (First Reply, ECF No. 4 at 3.)

Petitioner explains that he is not seeking double credit; he is arguing that service of his federal sentence began on December 2, 2005, when the federal writ was executed. (Id. at 3.) Although he acknowledges that Delvalle was probably given credit beginning August 23, 2005, Petitioner is seeking credit beginning on December 2, 2005. (Id.)

In a second reply to Respondent's answer, Petitioner argues that Respondent failed to acknowledge that the DSCC issued a Memorandum on June 28, 2017, admitting that Petitioner's sentencing court recommended that the federal sentence run concurrently with the state sentence. (Second Reply, ECF No. 7 at 1-2.) Petitioner contends Respondent waived the issue of the June 28, 2017 DSCC Memorandum and Respondent should be estopped from

---

[5] Respondent is not required to address whether the BOP correctly calculated Delvalle's sentence. Respondent has adequately addressed the relevant facts and law concerning the BOP's calculation of Petitioner's sentence.

arguing Petitioner's federal and state sentences are not fully concurrent. (Second Reply, ECF No. 7 at 2.)

Petitioner also challenges Respondent's representation that Petitioner was given prior custody credit against his state sentence because the documents Respondent submitted in support of this statement are in Spanish and were not translated for this Court. (Id. at 2.) Petitioner further contends that the BOP is not authorized to interpret a sentence to determine if it is concurrent or consecutive to another sentence. (Id.)[6]

Next, Petitioner argues that if the federal court had imposed a consecutive sentence, it would have violated the double jeopardy clause because the conduct that he pled to in the State case

> was directly related to the conduct I was charged with and pled to federally. Thus, that would clearly extend my punishment in violation of the Eighth Amendment and would cause me to be punished twice for the same conduct in violation of the Fifth Amendment.

---

[6] In his second reply, Petitioner also urged the Court to grant the sentencing credit he seeks because he is otherwise entitled to resentencing under the First Step Act, Pub. L. 115-391, 132 Stat. 5194, § 404, to reduce his sentence another two levels. (Id. at 3.) Petitioner acknowledged that he should seek such relief in the sentencing court, but in the interests of judicial economy, he asks this Court to grant relief. (Id.) In his second reply, Petitioner also sought recalculation of his good time credit under the First Step Act. By Order dated February 28, 2019, this Court explained that Petitioner must seek resentencing for his criminal conviction under the First Step Act in his sentencing court and that he should file a new and separate petition [in this Court] to challenge the BOP's failure to award good time credit under the First Step Act. (Memorandum and Order, ECF No. 8.)

(Second Reply, ECF No. 7 at 3.) This claim is an attack on the conviction and sentence rather than the execution of the sentence and must be raised in the sentencing court. (Memorandum and Order, ECF No. 8.)

Finally, Petitioner asked the Court to hold an evidentiary hearing and to order Respondent to produce a certified and translated copy of the plea and sentencing documents from Puerto Rico; a transcript of the sentencing hearing; the plea agreement; and any other relevant documents not in the file. (Second Reply, ECF No. 7 at 4.) This Court ordered Respondent to file a Sur-reply to Petitioner's reply, including a response to Petitioner's assertion that certain of Respondent's exhibits to the Answer are written in Spanish and not translated and that additional sentencing related documents should be produced. (Memorandum and Order, ECF No. 8.) The Court construed the petition to raise a claim that Petitioner's federal and state sentences were fully concurrent based on an adjustment by the sentencing court under U.S.S.G. § 5G1.3. (Id.)

D.  Subsequent Filings

Respondent filed a letter application, seeking to submit Petitioner's PSR and sentencing Statement of Reasons under seal with Respondent's sur-reply. (Letter Application, ECF No. 13 at 1.) Respondent notes that Petitioner's federal sentencing transcript is no longer available and that the PSR and Statement

of Reasons will show whether Petitioner's state and federal sentences involved relevant conduct under U.S.S.G. § 5G1.3. (Letter Application, ECF No. 13 at 2.)

Petitioner objects to Respondent's letter application, accusing Respondent of intentionally delaying resolution of this matter. (Letter, ECF No. 12.) Petitioner also notes that Respondent has not translated the Spanish documents submitted with its answer. (Id.) Petitioner also mistakenly believed that this Court stated it would not address Petitioner's argument under § 5G1.3, and therefore production of the PSR and Statement of Reasons should be denied. (Id.)

By Order dated April 24, 2019, this Court directed Petitioner to advise the Court whether he wished to proceed with a claim under § 5G1.3, and if so, the Court intended to grant Respondent's request to file the PSR and Statement of Reasons under seal because the documents were likely to contain relevant information concerning whether Petitioner's sentencing court granted an adjustment under § 5G1.3(b) or (c). (Order, ECF No. 14.)

Petitioner responded by letter. (Letter, ECF No. 15.) First, Petitioner explains that Respondent's failure to translate documents *from English into Spanish for his use* is more of a problem than Respondent failing to translate certain exhibits from Spanish into English for the Court, and further that the government did not translate any documents into Spanish for Petitioner in his

criminal and administrative proceedings or in this case. (Letter, ECF No. 15 at 1.)

Second, Petitioner asserts that Respondent waived the right to challenge the June 28, 2017 DSCC Memorandum, which stated that his federal and state sentences are concurrent. (Id. at 2.) Petitioner contends that because the June 28, 2017 DSCC Memorandum does not distinguish between concurrent and fully concurrent sentences, the Court should assume it meant fully concurrent and Respondent should be estopped from arguing otherwise. (Id.) Finally, Petitioner states that he wants the Court to address whether he was sentenced under § 5G1.3(b) or (c). (Id.) The Court then granted Respondent's application to file the PSR and Statement of Reasons under seal. (Order, ECF No. 16.)

Respondent filed its sur-reply on May 10, 2019. (Sur-reply, ECF No. 17.) Respondent asserts that Petitioner's federal sentence was deemed by the BOP as concurrent with his Commonwealth of Puerto Rico sentence, but the federal sentence did not commence until the day it was imposed. (Id. at 1.)

Respondent also submitted a supplemental declaration of J.R. Johnson, explaining that the Commonwealth of Puerto Rico provides documents in Spanish and does not provide a translation. ("Second Johnson Decl.," ECF No. 17-1, ¶3.) When Spanish documents are used by the DSCC in an inmate's sentence calculation, a Spanish speaking and reading staff member reviews the documents. (Id.) Based on

this review, the time period of August 23, 2005 through August 20, 2007 was credited against Petitioner's Commonwealth of Puerto Rico sentence. (First Johnson Decl., ECF No. 3-1, ¶17; ECF No 3-2, Attach. 16.) Respondent further argues that Petitioner should have raised the issue regrading Spanish translations during his criminal proceedings on appeal of his criminal matter, and he cannot raise the issue now. (Sur-reply, ECF No. 17 at 4-5.)

Finally, Respondent submits that the federal sentencing court did not grant Petitioner a downward departure under § 5G1.3(b) or (c), to make his sentences retroactively concurrent. (Id. at 5.) Respondent contends that neither § 5G1.3(b) or (c) applies here. (Id.) Subsection b does not apply, Respondent argues, because Petitioner's Commonwealth of Puerto Rico conviction did not result from "another offense that is relevant conduct to" his federal conviction. (Id. at 6.) Subsection c does not apply because there is no indication that the District Court intended for the sentences to be retroactively concurrent. (Id.)

Respondent maintains that the state and federal convictions did not involve relevant conduct because the federal conviction was for conspiracy to possess with intent to distribute controlled substances. (Id. at 7.) Petitioner's convictions in the Commonwealth of Puerto Rico were for second-degree murder and firearms offenses. (Id. at 8.) The PSR for Petitioner's federal sentence does not reflect any adjustments to the offense level for

12

murder. (Sur-reply, ECF No. 17 at 8.) Thus, the BOP determined that the state and federal convictions did not involve relevant conduct. (First Johnson Decl., Attach. 11, ECF No. 3-2 at 26-27.)

Respondent further asserts there is no evidence the sentencing judge intended for Petitioner's federal sentence to run retroactively concurrent with a yet to be imposed state sentence. (Sur-reply, ECF No. 17 at 9-10.) Instead, the BOP gave effect to the sentencing court's intent for concurrent sentences by commencing Petitioner's federal sentence on the date it was imposed and running it concurrently with the yet to be imposed undischarged portion of his state sentence. (<u>Id.</u> at 9.)

III. DISCUSSION

A.  <u>Failure to Translate Documents</u>

Respondent has explained that the Commonwealth of Puerto Rico does not translate Spanish documents that it submits to the DSCC. (Second Johnson Decl., ECF No. 17, ¶3); <u>see</u> supra n. 3. This Court will not consider any exhibits submitted by the parties that are written in Spanish.[7] The Court will, however, rely on Mr. Johnson's

---

[7] "Where a document is written in a foreign language and the submitting party fails to provide an English translation, a court may appropriately decline to consider the document as part of the record on summary judgment." <u>In re Solar Trust of America, LLC</u>, Case No. 12-11136(KG), 2014 WL 4068635, at *3 (D. Del. Aug. 18, 2014) (listing cases). The following exhibits/attachments submitted by the parties are written in Spanish: Petition, ECF No. 1-1 at 7-25; First Johnson Decl., Attach. 4, ECF No. 3-2 at 14; Attach. 5, ECF No. 3-2 at 16; Attach. 6, ECF No. 3-2 at 18; Attach. 7, ECF No. 3-2 at 20; Attach. 16, ECF No. 3-2 at 46-47.

statement, given under penalty of perjury pursuant to 28 U.S.C. § 1746,

> when documents from Puerto Rico, or another Spanish-speaking country, are utilized by the BOP in an inmate's sentence computation, a Spanish-speaking/reading staff member always confirms the accuracy of the information before the sentence computation is completed.

(Second Johnson Decl., ECF No. 17, ¶3.) Therefore, the Court will rely on the representations made by Johnson in his declarations concerning the DSCC's computation of his sentence.

In Petitioner's April 30, 2019 letter to the Court (Letter, ECF No. 15), he states that his bigger concern is that "the Federal Bureau of Prisons, the U.S. Attorney, and the Court have also failed to translate <u>ANY</u> papers into Spanish <u>for</u> <u>me</u> … in ANY of the proceedings to date (criminal, administrative, and the instant case.)" Petitioner may raise this issue only as to the instant case. Any claims challenging his conviction and sentence must be brought in the sentencing court under 28 U.S.C. § 2255. Claims regarding Federal Bureau of Prisons administrative proceedings must first be exhausted in the agency, and then may be raised in Court if the Court has jurisdiction.

As to translation of documents in the instant case, "in general, a pro se civil plaintiff is not entitled to an interpreter or translator." <u>Desulma v. Goolsby</u>, No. 98CIV.2078(RMB)(RLE), 1999 WL 147695 at *1 (S.D.N.Y. Mar. 16, 1999) (citing <u>Pedraza v.</u>

<u>Phoenix</u>, No. 93 CIV. 2631 (MGC), 1994 WL 177285 (S.D.N.Y. May 9, 1994) ("there is no federal rule that gives an indigent non-English speaking civil plaintiff the right to a court-ordered translation of pre-trial motions"); <u>Echevarriaromas v. Warden</u>, No. 1:17CV641, 2018 WL 1070872 at *2 (N.D. Ohio Feb. 2, 2018) ("[the petitioners] failed to identify any legally cognizable right to the assistance of a translator or interpreter in preparation of habeas petitions"); <u>Youssef v. Miller</u>, No. 1:15CV2150, 2016 WL 4248724, at *2, (N.D. Ohio Aug. 11, 2016) ("There is no right to a translator or interpreter for habeas petitioners"); <u>Hersi v. Marquis</u>, No. 1:18-CV-2437, 2019 WL 1639755, at *2 (N.D. Ohio Apr. 16, 2019) ("no provision under the Antiterrorism and Effective Death Penalty Act ("AEDPA") authorizes the court to appoint an interpreter for the preparation of a Habeas petitioner's pleadings.") Petitioner, having obtained his own assistance with translation, has adequately responded to court documents written in English in this matter. The Court denies Petitioner's request for document translation by the Court or by Respondent.

B. <u>Analysis</u>

28 U.S.C. § 2241 provides, in relevant part:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions . . .

> (c) The writ of habeas corpus shall not extend to a prisoner unless—

. . .

> (3) He is in custody in violation of the
> Constitution or laws or treaties of the
> United States; . . .

"After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence." <u>United States v. Wilson</u>, 503 U.S. 329, 335 (1992). The calculation of federal sentences is governed by 18 U.S.C. § 3585, which requires two determinations (1) when does the federal sentence commence; and (2) is the prisoner eligible for prior custody credit. 18 U.S.C. § 3585(a), (b). A prisoner may challenge the BOP's calculation of his/her federal sentence in a habeas corpus petition under 28 U.S.C. § 2241. <u>Savage v. Zickefoose</u>, 446 F. App'x 524, 526 (3d Cir. 2011) (per curiam).

18 U.S.C. § 3585 provides:

> (a) Commencement of sentence.--A sentence to
> a term of imprisonment commences on the date
> the defendant is received in custody awaiting
> transportation to, or arrives voluntarily to
> commence service of sentence at, the official
> detention facility at which the sentence is to
> be served.

> (b) Credit for prior custody.--A defendant
> shall be given credit toward the service of a
> term of imprisonment for any time he has spent
> in official detention prior to the date the
> sentence commences—

>> (1) as a result of the offense for which
>> the sentence was imposed; or

(2) as a result of any other charge for
which the defendant was arrested after
the commission of the offense for which
the sentence was imposed;

that has not been credited against another
sentence.

Petitioner's federal sentence was imposed on August 21, 2007.
Pursuant to 18 U.S.C. § 3585(a), Petitioner's federal sentence did
not commence until he was received in federal custody to serve his
federal sentence. Petitioner was received in federal custody to
begin serving his federal sentence after he was released on parole
by Commonwealth of Puerto Rico authorities on October 24, 2014 and
transferred to the custody of the U.S. Marshals.

Pursuant to Barden v. Keohane, 921 F.2d 476 (3d Cir. 1990),
the BOP has the authority to designate, *nunc pro tunc*, a state
correctional facility for service of an inmate's federal sentence.
When the BOP does so, the inmate may receive credit for the time
period in question against both his state and federal sentence,
*beginning on the date the federal sentence was imposed*. See DeJesus
v. Zenk, 374 F. App'x 245, 247 (3d Cir. 2010) (per curiam)
(emphasis added) (when a district designates the state institution
as the place for service of the federal sentence to achieve
concurrent sentences, the federal sentence is properly deemed to
commence on the date imposed).

After receiving the BOP's inquiry about a *nunc pro tunc*
designation, although not necessarily in response to it,

Petitioner's sentencing court issued an amended judgment on June 16, 2017, ordering that Petitioner's federal sentence be served concurrently with his state sentence. This prompted the BOP to *nunc pro tunc* designate the state facility for service of Petitioner's federal sentence. Petitioner, however, was not entitled to credit for time served in state custody prior to imposition of the federal sentence. DeJesus, 374 F. App'x at 247. The BOP properly determined that Petitioner's federal sentence commenced when it was imposed on August 21, 2007. Therefore, the Court turns to the BOP's determination of Petitioner's prior custody credit under 18 U.S.C. § 3585(b).

First, Petitioner alleges that the Commonwealth of Puerto Rico and the federal government are the same sovereign, pursuant to Puerto Rico v. Sanchez-Valle, 136 S. Ct. 1863 (2016). The Supreme Court in Sanchez-Valle recognized that the Commonwealth of Puerto Rico has the power to enact and enforce its own criminal laws. Id. at 1875. Solely for the purpose of the Double Jeopardy Clause, Puerto Rico and the United States are barred "from prosecuting a single person for the same conduct under equivalent criminal laws" because Puerto Rico's authority to enact and enforce criminal laws came from Congress. Id. at 1876. On the other hand, for the purpose of sentence calculations, Commonwealth of Puerto Rico sentences are treated like state sentences. See e.g. Perez-Rodriguez v. Holt, 439 F. App'x 127, 130 (3d Cir. 2011) (per

curiam) (the petitioner's Commonwealth of Puerto Rico criminal sentence ran consecutively with his federal sentence); <u>Negron v. Warden of FCI-Schuykill</u>, 582 F. App'x 124, 125 (3d Cir. 2014) (per curiam) (the petitioner was not entitled to credit against his federal sentence for time that was credited to his "state" sentence for conviction in the Superior Court of Puerto Rico). The Court rejects Petitioner's "same sovereign" basis for relief.

Second, Petitioner contends the Commonwealth of Puerto Rico relinquished jurisdiction over him when he was transferred back to the Commonwealth via a writ of habeas corpus *ad prosequendum*. While Petitioner recognizes that federal authorities do not obtain primary custody over an offender when the offender is produced from state custody for prosecution pursuant to a writ of habeas corpus *ad prosequendum*,[8] Petitioner suggests that because the Commonwealth issued a writ of habeas corpus *ad prosequendum* to return custody of Petitioner to the Commonwealth of Puerto Rico on February 20, 2007, it must have relinquished custody to federal authorities when it transferred him in the first instance. According to the United States Marshals Service Individual Custody/Detention Report, Petitioner was transferred to a local court in Ponce and returned to custody of the U.S. Marshals on the

---

[8] <u>Rios v. Wiley</u>, 201 F.3d 257, 274 (3d Cir. 2000).

same day, February 20, 2007. (First Johnson Decl., Attach. 2, ECF No. 3-2 at 5.)

There is no legal support for Petitioner's contention. When the Commonwealth of Puerto Rico transferred Petitioner to federal authorities pursuant to a writ of habeas corpus *ad prosequendum* it retained its jurisdiction. Primary jurisdiction is obtained by the sovereign which first arrested the offender, until that sovereign relinquishes jurisdiction by release on bail, release on parole, dismissal of the charges or expiration of the sentence. Rios, 201 F.3d at 274. "The sovereign that first acquires custody of a defendant is entitled to custody until any sentence imposed is served." Allen v. Nash, 236 F. App'x 779, 783 (3d Cir. 2007) (per curiam) (citing Ponzi v. Fessenden, 258 U.S. 254, 260 (1922)). The Commonwealth of Puerto Rico retained its primary jurisdiction over Petitioner until he was released on parole from his Commonwealth of Puerto Rico sentence on October 24, 2014.

Third, Petitioner seeks credit against his federal sentence pursuant to Willis v. United States, 438 F.2d 923 (5th Cir. 1971). In Willis, the Fifth Circuit held that

> if [the offender] "was denied release on bail because the federal detainer was lodged against him, then that was time spent in custody in connection with the (federal) offense," (18 U.S.C.A. § 3568) since the detainer was issued upon authority of the appellant's federal conviction and sentence.

<u>Willis</u>, 438 F.2d at 925 (quoting <u>Davis v. Attorney General</u>, 425 F.2d 238, 240 (5th Cir. 1970)).

The Third Circuit, however, held that <u>Willis</u> is inapplicable to cases where the offender finished serving his state sentence before his federal sentence commenced. <u>Castro v. Sniezek</u>, 437 F. App'x 70, 73 (3d Cir. 2011) (per curiam); see <u>Willis</u>, 438 F.2d at 925 ("clearly [the petitioner] is not entitled to credit for … [time he was actually serving his state sentence for offenses unrelated to the federal charges"); <u>Shahid v. Schultz</u>, 272 F. App'x 150, 153 (3d Cir. 2008) (per curiam) ("[e]ven if … [the petitioner's] release on bail had been prevented by the federal detainer … he still would not have been entitled to a credit for the time served in state custody because that time was credited against his state sentence[.]") Petitioner's federal sentence did not commence until Petitioner finished serving his Commonwealth of Puerto Rico sentence. Therefore, he is not entitled to <u>Willis</u> credit.

Petitioner's final basis for seeking credit against his federal sentence for time he spent in state custody through August 20, 2007 is that the sentencing court ordered his federal sentence to run fully concurrently because his state and federal sentences involved relevant conduct. The Court construed this claim as an allegation that Petitioner's sentencing court granted Petitioner

an adjustment or downward departure on his sentence under U.S.S.G.
§ 5G1.3(b) or (c).

As a starting point, "multiple terms of imprisonment imposed
at different times run consecutively unless the court orders that
the terms are to run concurrently." 18 U.S.C. § 3584(a). Further,
a federal sentencing court has the authority to determine whether
a federal sentence will be concurrent or consecutive to an
anticipated but not yet imposed state sentence, although it is not
required to make a determination before the anticipated sentence
is imposed. Setser v. U.S., 566 U.S. 231, 234-42 (2012).

Here, the sentencing court was initially silent as to whether
the federal sentence was concurrent or consecutive to Petitioner's
anticipated but not yet imposed state sentence. Petitioner
contends that pursuant to the Amended Judgment, the sentencing
court ordered his sentences to run fully concurrent with his state
sentence pursuant to U.S.S.G. § 5G1.3(b) or (c).[9] (Letter, ECF No.

---

[9] Respondent acknowledged in its answer that the sentencing court
amended its judgment on June 16, 2017 to make Petitioner's federal
sentence concurrent to his state sentence, and that the BOP
recalculated Petitioner's sentence to designate the state
correctional facility as the place for service of Petitioner's
federal sentence. (Answer, ECF No. 3 at 4.) Therefore, the Court
rejects Petitioner's claim that Respondent waived its argument
that his sentences were not concurrent. Further, because
Petitioner did not clearly allege that his sentences were fully
concurrent or retroactively concurrent under § 5G1.3(b) or (c),
Respondent did not waive this issue by not addressing it in its
answer. Based on Petitioner's second reply to the answer and his
reference to "relevant conduct," the Court construed the petition
to include such a claim and directed Respondent to file a sur-

15.) Therefore, this Court need only address whether the BOP properly determined that the federal sentencing court did not intend to adjust Petitioner's federal sentence under § 5G1.3(b) or (c) when the court amended the judgment in Petitioner's criminal action on June 16, 2017. The PSR and the Statement of Reasons regarding Petitioner's original judgment are not particularly helpful with respect to interpreting the Amended Judgment.[10]

The BOP must give effect to a sentencing court's intent to adjust a sentence under § 5G1.3. <u>See</u> <u>e.g.</u> <u>Ruggiano v. Reish</u>, 307 F.3d 121, 131 (3d Cir. 2002); <u>Delestre v. Pugh</u>, 196 F. App'x 75, 76 (3d Cir. 2006) (per curiam). The version of U.S.S.G. § 5G1.3 in

---

reply to respond to this claim. Respondent complied with the Court's order.

[10] The Court, however, notes that the sentencing court adopted the PSR without change. (Second Johnson Decl., Ex. C, ECF No. 17-3 at 2.) Petitioner pled guilty to Count I in violation of 21 U.S.C. §§ 841(a)(1) and 846 and stipulated to a drug amount of ten kilograms but less than 30 kilograms of cocaine. (<u>Id.</u>, Ex. B, ECF No. 17-2 at 971). The plea agreement also contained stipulations concerning certain sentencing guidelines, but § 5G1.3 was not mentioned. (Second Johnson Decl., Ex. B, ECF No. 17-2.) The parties stipulated to recommending a term of imprisonment of 216 months. (<u>Id.</u> at 6.) The parties further agreed that any request by the defendant for an adjustment or departure from the 216 months would be considered a material breach of the plea agreement. (<u>Id.</u> at 6-7.) The court sentenced Petitioner to 216-months imprisonment. (First Johnson Decl., ECF No. 3, ¶6.) Further, the PSR reflected Petitioner's pending murder and weapons violations in the Commonwealth of Puerto Rico (<u>Id.</u>, Ex. B, ECF No. 17-2 at 16-17) but discussed only adjustments to the federal sentence related to drug conspiracy and use of firearms within a conspiracy. (<u>Id.</u> at 15-16.) Thus, the record does not support a finding that the sentencing court intended to adjust Petitioner's sentence under 5G1.3(b) or (c) upon original sentencing.

23

effect at the time of Petitioner's Amended Judgment on June 16,

2017 provides:

> §5G1.3. Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment or Anticipated State Term of Imprisonment
>
> (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.
>
> (b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows:
>
> (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
>
> (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.
>
> (c) If subsection (a) does not apply, and a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct), the sentence for the instant offense

24

shall be imposed to run concurrently to the anticipated term of imprisonment.

(d) (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.[11]

"[A]djusting a sentence for time served on a state conviction pursuant to § 5G1.3 is within the exclusive authority of the sentencing court." Ruggiano, 307 F.3d at 135 (3d Cir. 2002). Where the sentencing court, by its oral and written statements, clearly intended to adjust downward under § 5G1.3, the decision is binding on the BOP. Id.

Sentencing courts are required to be explicit when adjusting a sentence under § 5G1.3 so as to be fully concurrent with a state sentence. Ruggiano, 307 F.3d at 133 (3d Cir. 2002) ("[w]e therefore urge sentencing courts in the future to state something to the effect of "I hereby adjust the defendant's federal sentence under § 5G1.3(c) so as to be fully concurrent with his state sentence[.]") Where there is nothing to demonstrate the intent of the federal sentencing court to give the petitioner the benefit of

---

[11] 2016 Guidelines available at https://www.ussc.gov/guidelines/2016-guidelines-manual/2016-chapter-5#NaN.

25

"retroactive concurrency," the BOP may properly determine that the petitioner's concurrent federal and state sentences "commenced on the date his federal sentence was imposed … and not on the date when he was arrested on the federal charges." Holloman v. Warden Fairton FCI, 635 F. App'x 12, 16 (3d Cir. 2015) (per curiam).

In this case, there is nothing in the Amended Judgment to suggest that the sentencing court granted an adjustment to Petitioner's federal sentence under § 5G1.3(b) or (c). Petitioner has not offered any support for his bare allegation that the sentencing court intended the concurrent sentence as "fully concurrent" or "retroactively concurrent" with the state sentence. The Bureau of Prison's designation of the state correctional facility as the place for service of the Petitioner's sentence, in response to the Amended Judgment, does not alter the fact that a federal sentence does not commence before it is imposed. See Prescod, Jr. v. Schuylkill, 630 F. App'x 144, 147 (3d Cir. 2015) (per curiam) ("a federal sentence cannot commence before it is imposed, 18 U.S.C. § 3585(a), and [the petitioner] points to no authority that holds that a *nunc pro tunc* designation would operate to commence a sentence earlier.") Therefore, the BOP properly determined that Petitioner's federal sentence commenced when it was imposed on August 21, 2007, at which time it ran concurrent with Petitioner's sentence from the Commonwealth of Puerto Rico. The BOP properly calculated Petitioner's sentence.

IV.  CONCLUSION

For the reasons discussed above, the habeas petition is denied.

An appropriate Order follows.

Dated: June 5, 2019

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**